GASKINS, J.
 

 liThe defendant, Johnell Marie Thompson, appeals her conviction for armed robbery, arguing that the trial court erred in denying her motion to exclude inculpatory evidence which had not been disclosed to her prior to trial. For the following reasons, we affirm the defendant’s conviction and sentence.
 

 FACTS
 

 On March 25, 2007, the victim of this offense, Tony Boutwell, got off work at 2:00 a.m. He worked as a bartender at the Flashback Casino. Mr. Boutwell went home to his small travel trailer, watched television, and fell asleep on the couch. Around 5:00 a.m., he was awakened by the telephone ringing and a simultaneous beating on his door. Ignoring the phone call, Mr. Boutwell went to the door and found the defendant standing there. The victim knew the defendant because she was the sister of Michelle Williams, a woman with whom Mr. Boutwell had an intimate relationship. The defendant was crying and told Mr. Boutwell that Ms. Williams had been shot and was in the defendant’s car outside. She asked to use the victim’s telephone to call for police and an ambulance. Actually, Ms. Williams was not in the car and had not been injured.
 

 As Mr. Boutwell turned to retrieve his telephone, the defendant followed him into the residence. Mr. Boutwell decided to go outside to look in the car and began putting on his pants. The defendant followed Mr. Boutwell further into the residence and tried to grab the victim’s wallet. Mr. Boutwell noticed that a large man he had never seen before had entered the trailer. The man was wearing a jacket with a Caddo Parish emblem on |2it. He was later identified as Gregory Bledsoe. The defendant and Bledsoe pushed Mr. Bout-well down on the bed and jumped on top of him, pinning him down. The defendant got Mr. Boutwell’s wallet and pocketknife out of his pants. The defendant and Bled-soe demanded that Mr. Boutwell open a safe that was located beside the bed. When Mr. Boutwell refused, the defendant stabbed him with the pocket knife, cutting his arm.
 

 Mr. Boutwell told his assailants that he could not remember the combination to the safe and needed to get it from a closet. In fact, Mr. Boutwell had a gun in the closet and attempted to retrieve it. Bledsoe saw the gun and picked it up before Mr. Bout-well could get to it. Bledsoe held the gun on Mr. Boutwell and demanded that he open the safe. At that point, Mr. Boutwell told his assailants that the safe was open.
 

 Mr. Boutwell said that the defendant and Bledsoe took $100 from his wallet and $500 from the safe. Mr. Boutwell prevailed upon the pair to take the money and leave the wallet with his identification be
 
 *1004
 
 hind. Bledsoe also took the victim’s gun. During the incident, Mr. Boutwell stated that the defendant urged Bledsoe to kill him three times. The defendant and Bled-soe then left the scene.
 

 Mr. Boutwell went to a neighbor’s residence and called the police. Officer Shawn Hurd responded to the call at 5:50 a.m. on March 25, 2007. He called the fire department and personnel were sent to treat Mr. Boutwell’s wounds. Officer Hurd drove Mr. Boutwell to the hospital. On the way, Mr. Boutwell directed Officer Hurd to the FEMA trailer park at the Louisiana State Fairgrounds where Michelle Williams was living.
 

 | aAt the hospital, Mr. Boutwell was shown a photo lineup, but was not able to identify the picture of the defendant. It was later learned that the photo used in that lineup was old and the defendant’s appearance had changed. A new photo lineup was assembled, using a recent photograph of the defendant. Mr. Boutwell was readily able to identify the defendant in that photo lineup and stated that the defendant was the person who stabbed him.
 

 Detective Paul Robinson went to Ms. Williams’ residence later that morning. She told him that she and her family came to Shreveport from New Orleans after Hurricane Katrina. She had been in a relationship with the victim for about two years. She said that her sister, the defendant, had been with her to Mr. Boutwell’s trailer a few times. Ms. Williams had spent the night at the victim’s trailer several times and knew that there was a safe in the room. Mr. Boutwell frequently gave money to Ms. Williams.
 

 According to Ms. Williams, the defendant picked her up several hours before this offense and then picked up Bledsoe. The trio drove around smoking crack cocaine. An argument ensued when Ms. Williams thought that someone had taken her drugs. When the need for additional money to buy drugs arose, the defendant suggested that Ms. Williams get some money from Mr. Boutwell. Bledsoe then suggested that they rob the victim.
 

 After arguing about the plot to rob the victim, Ms. Williams asked to be let out of the car. The defendant was driving and let Ms. Williams out. Ms. Williams walked to a truck stop in Greenwood, Louisiana. She tried to call numerous people, including Mr. Boutwell, to get a ride home. She |4eventually got a ride, arriving at her residence around 7:30 a.m. Later that morning, Detective Robinson came to the residence and told her about the robbery and stabbing of Mr. Boutwell. He asked about the location of the defendant. Detective Robinson took Ms. Williams to the hospital to see Mr. Boutwell. Later that day, Ms. Williams was shown the initial photo lineup and informed police that the picture of the defendant was old. Ms. Williams went with Detective Robinson to find the defendant. When the defendant passed them in her car, she was pulled over and arrested. The defendant became very excited and spontaneously stated that she was not the one who had stabbed the man. The person she claimed stabbed the victim was a man she knew only as “Black,” who was later identified as Bledsoe.
 

 The defendant directed police to a house where Bledsoe was apprehended, still wearing the jacket with the Caddo Parish emblem on it. Detective Robinson described the jacket as one that would be worn by a Caddo Parish maintenance worker. The owner of the house where Bledsoe was found gave consent to search and the victim’s gun was found in a clothes hamper.
 

 After her arrest, the defendant was advised of her
 
 Miranda
 
 rights and gave a
 
 *1005
 
 taped statement to the police. The defendant was originally charged with armed robbery with a firearm. She was tried by jury for armed robbery and convicted as charged. A motion for new trial and a motion for post verdict judgment of acquittal were denied by the trial court. The defendant was sentenced to serve 12 years at hard labor without benefit of parole, probation, or suspension of sentence.
 

 IsThe defendant appealed, claiming that the trial court erred in denying her motion to exclude inculpatory evidence which had not been disclosed to her prior to trial.
 

 DISCOVERY
 

 In this matter, defense counsel filed a discovery motion and motion for production of documents on April 2, 2007. At the trial of this case, before
 
 voir dire
 
 was complete, defense counsel informed the trial court that she had just become aware that there were additional police reports that had not been provided to her previously. The defense counsel stated that a police report by Detective Robinson had missing pages. A supplemental report was supplied to defense counsel in court that morning which showed that, after Mr. Boutwell’s initial failure to identify the defendant in a photo lineup, a second photo lineup was assembled and shown to him from which he made a positive identification of the defendant as his attacker. The report also showed that Mr. Boutwell identified the gun seized in connection with the case and the jacket worn by Bledsoe at the time of his arrest. Defense counsel made a motion
 
 in limine
 
 to prohibit the prosecution from introducing evidence of the second photo lineup, the gun, and the jacket.
 

 The state contended that the Sunday before the trial began, one of the prosecution attorneys handling the matter spoke with defense counsel regarding the missing pages from the police report. According to the prosecution, the defense attorney requested another copy of the report along with the supplemental police report. The prosecution also claimed that the 1 r,second photo lineup was discussed. The prosecution stated that defense counsel did not ask for the second photo lineup and the prosecution thought that defense counsel had a copy. The defense counsel denied the conversation regarding the second photo lineup.
 

 The prosecution argued that the defendant’s identity was not an issue in this case, that the supplemental police report did not change any of the witnesses, and that a police report is not discoverable even though the prosecution maintains an “open file” discovery policy. The prosecution urged that the defense counsel could have interviewed the witnesses and learned about the second photo lineup. The prosecution admitted that it did not file a supplemental discovery response regarding the disputed documents. The prosecution said that it received the reports later and left them at the front reception desk to tender to defense counsel.
 

 The trial court deferred ruling on the motion until later in the trial; eventually the motion
 
 in limine
 
 was denied. The defense objected to the ruling. On appeal, the defendant argues that the identification in the second photo lineup was compelling evidence. She maintained that the jurors were likely to give great weight to the identification of the victim in a photo lineup and the defendant was prejudiced because her counsel had previously been given a police report that stated that the victim could not identify the defendant in the initial photo lineup. Defense counsel also contends that it was not informed that the weapon used in the robbery and the jacket worn by Bledsoe had been found.
 

 
 *1006
 
 17Legal Principies
 

 La. C. Cr. P. art. 718 sets forth the duty of the prosecution to respond to motions for discovery by the defendant and provides:
 

 Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
 

 (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
 

 (2) are intended for use by the state as evidence at the trial, or
 

 (3) were obtained from or belong to the defendant.
 

 The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
 

 La. C. Cr. P. art. 729.3 sets forth the continuing duty to supplement discovery responses. That statute provides:
 

 If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
 

 La. C. Cr. P. art. 729.5(A) outlines the sanctions applicable for failure to permit discovery. The article states:
 

 A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing Linto evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
 

 Louisiana’s criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the state’s case, and to allow a proper assessment of the strength of its evidence
 
 in
 
 preparing a defense. La. C. Cr. P. arts. 716-729;
 
 State v. Allen,
 
 94-2262 (La.11/13/95), 663 So.2d 686.
 

 The failure of the state to comply with discovery rules does not bring automatic reversal; rather, prejudice must be shown.
 
 State v. Harris,
 
 2000-3459 (La.2/26/02), 812 So.2d 612. A trial court has discretion to choose an appropriate remedy for a discovery violation. See
 
 State v. Bourque,
 
 96-0842 (La.7/1/97), 699 So.2d 1,
 
 cert. denied,
 
 523
 
 U.S.
 
 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). When the defendant is lulled into a misapprehension of the strength of the state’s case through the prosecutor’s failure to disclose timely or fully and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error.
 
 State v. Allen, supra.
 

 [1]
 

 
 *1007
 
 Discussion
 

 The trial court in this matter felt that there had been a breakdown in communication between the state and the defense; however, it found no discovery violation and no prejudice to the defendant. The defense was | ^informed of and given a copy of the supplemental police report during
 
 voir dire.
 
 There was ample time to review the report; no request for a continuance was made by defense counsel.
 

 Defense counsel was able to cross-examine Detective Robinson with regard to both photo lineups as well as the investigation of this offense. The defendant’s counsel also had an opportunity to question the victim regarding his identification of the defendant as his assailant. It is particularly important to note that the victim knew the defendant when she arrived at his door on the night of the offense. The identity of the defendant as the perpetrator of the offense was not at issue in this matter. There is no showing of prejudice regarding the second photo lineup. See
 
 State v. Smith,
 
 99-1020 (La.App. 5th Cir.2/29/00), 757 So.2d 74,
 
 writs denied,
 
 2000-1017 (La.3/30/01), 788 So.2d 439, 2001-0854 (La.11/21/01), 802 So.2d 631.
 

 The defendant has failed to show any prejudice from the victim’s identification of his gun which was taken during the robbery or by references to the jacket worn by Bledsoe while he aided the defendant in the commission of this offense and when he was arrested.
 

 The trial court in this matter did not abuse its discretion in denying the motion
 
 in limine
 
 on the basis of the lack of a showing of a discovery violation and a lack of prejudice to the defendant. Aceordingly, we affirm the trial court’s ruling and the defendant’s conviction and sentence.
 

 1 ^CONCLUSION
 

 For the reasons stated above, we affirm the conviction and sentence of the defendant, Johnell Marie Thompson, for armed robbery.
 

 AFFIRMED.
 

 [1]
 

 . While the rales of discovery do not require production of a copy of a police report, once
 
 *1007
 
 "open file” discovery is permitted, the prosecutor should supplement discovery with any supplemented police reports. Testimonial evidence regarding the gun and jacket is not discoverable under the discovery rules, although these items would be. See La. C. Cr. P. art. 718 and 723.