DREW, J.
11Willie Lee Johnson was convicted on three charges of molestation of a juvenile under Counts One, Two, and Three of the bill of information. He was also convicted for the crime of felony carnal knowledge of a juvenile, Count Four of the information. Each crime involved a different juvenile victim, and each sentence was ordered to be served consecutively with all other sentences.
We affirm all convictions. We vacate the illegal sentences for Counts One and Two, and remand for resentencing. We affirm the sentences for Counts Three and Four. We instruct the trial court to provide written sex offender notification requirements as to all four convictions.
I. FACTS
The defendant was tried under a bill of information for these crimes:
(1) molestation of the juvenile D.T.[1] (D.O.B. 3/14/80), occurring from January 1993 to January 1995, with incidents of molestation allegedly occurring during a period of more than one year;[2]
(2) molestation of the juvenile M.P. (D.O.B. 5/25/97), occurring from January 2008 to July 2010, with incidents of molestation allegedly occurring during a period of more than one year;[3]
(3) molestation of the juvenile D.T. (D.O.B. 5/28/99), occurring from May 2012 to February 2013,[4] and involving “the use of force, violence,J^duress, menace, psychological intimidation, threat and (sic) great bodily harm, and by the use of influence by virtue of a position of control and supervision over the juvenile”; and
(4) felony carnal knowledge of the juvenile M.P. (D.O.B. 5/25/1992), occurring from January 2008 to May 26, 2009.[5]
II. TRIAL TESTIMONY

A. The Four Victims

(1) ART is the victim listed in Count One. He testified:
• as of the date of this trial, he was 34 years of age;
• in 1993, at age 12, he was walking to Hattie Perry Park to play basketball;
• the defendant approached him and told him that he was a basketball coach;
• he asked if Art wanted to play on his team;
• the two chatted for a while about basketball and parted ways;
• a few days later, the defendant drove Art to the defendant’s house, where they played video games;
*294 • the defendant then asked Art if he had ever seen a pornographic movie;
• when Art said no, he took Art to his bedroom;
• the defendant played a pornographic movie and began masturbating;
• the defendant instructed Art to do the same;
• trusting the defendant, Art did so;
• on another occasion, he was sleeping over on- a sofa at the home of “Coach” and his wife, when he woke up as the defendant was rubbing his penis;
• “Coach” sexually molested him over a period of more than two years;
}⅜* the defendant gave' Art money, food, drugs, and hired prostitutes for him in exchange for sexual favors, including masturbation, oral and anal sex;[6]
• this abuse started when Art was 12 . and lasted until he was about 15, at which time the defendant turned his attention to younger boys; and
• being ashamed,. he never - reported .these events until many years later, after he found out that his nephew Cal was being victimized by “Coach.”-
(2) BEN is the molestation victim[7] listed in Count Two. He testified:
« he was born in May of 1997 and was age 17 at trial;
• he lives with his aunt, Sheila Logan, whom he calls “mom”;
• at age 11, Ben met the defendant when he came over in his red truck to pick up Ben’s older brother Pierre to take him to college;
• days, later, he went to the defendant’s house with his older brother Dan;
• the three of them played video games;
• on a later occasion, when -he was still 11, the two brothers returned to the defendant’s house;
• they all three played video games until Ben became tired and fell asleep;
• he awoke to find his pants down as . “Coach” was touching his penis;
• he told the defendant to stop and then fell back; asleep;
• he again awoke as the defendant was fondling him;
• he went to' take a shower and noticed a video camera in the bathroom;
• the defendant later showed him a video of him naked in the shower;
[,• he inadvertently caused some TV re- ' ception problems, for which the defendant struck him with a back scratch-er, which frightened him;
• he also saw the defendant touching Dan’s erect penis, after giving him pills, as Han and the defendant watched pornography; and
• he and Dan were living with their grandmother at the time, and she gave the defendant permission to watch the ' two of them in his home.
(3) CAL is the victim listed in Count Three. He testified:
• he was born on May 28,1999, and thus was 13 .at the time of the abuse and 15 on the date of this trial;
• until he was adjudicated in juvenile ' court, Cal -had lived with his Uncle Art;
• at the time of trial, he was living at the Caddo Juvenile Detention Center;
• at age 13, he first saw the defendant talking' with some neighborhood • boys across the street, thinking they were all cousins;
*295 • a few days later,, he was walking to Hattie Perry Park to play basketball, when the .defendant approached him in a red pickup truck;
• the defendant asked him if he played basketball and. , said that he was an AAU[8] (Amateur Athletics Union) basketball coach;.
• he believed and trusted the defendant to be a coach, so he submitted to the defendant’s control by entering the defendant’s red truck to talk to him more about basketball, as the two of them drove around;
• the defendant asked whether he had a girlfriend, and when he said he did not, the defendant began showing him pornographic videos on a cell phone;
• the defendant leaned over and touched Cal’s upper thigh and then his penis;
• when the defendant stopped, he warned Cal not to tell anyone;
• he jumped out of the truck and ran away, scared for his life;
h* at later times, he went with the defendant and some other boys to various places, such as thq Louisiana Boardwalk and a skating rink;
• he and his friends either called the defendant “Pops” or “Coach”;
• he once called the defendant to pick him up from school after a suspension;
• the defendant drove him to his brother’s house and gave him $20.00;
• he eventually told his family what the defendant had done; and
• the defendant touched him only the one time in his truck.
When defense counsel asked Cal if he had ever been convicted of a crime, Cal responded that he had. When defense counsel asked about the nature of the conviction, the state objected, arguing that Cal’s juvenile record was- inadmissible. Outside the presence of the jury, the trial court correctly sustained the objection, relying upon La. C.E. 609.1(F).[9]
The state never disclosed the nature of the juvenile conviction and the defense never asked the trial court to conduct an in camera inspection of Cal’s juvenile record. The trial court instructed the jury that the question was improper.
Cal responded in the negative when asked whether he had received anything of value or any advantage for his testimony.
(4) DAN is the victim listed in Count Four. He testified:
• he was in his 20s at the time of trial,[10] with a birth date of May 25, 1992;
h* he was born with cerebral palsy;
• when he was 16 years old, he met the defendant, who took him to his house a couple of times to play video games;
• during the second visit, the defendant approached him while he was playing a video game and began touching his thigh' and penis over his clothing;
*he ánd his little brother Ben went back to the defendant’s house a third time;
• during the third visit, the defendant performed oral 'sex on him;
*296 • he was afraid of the defendant, even though the defendant later gave him treats;
• he had anal sex with the defendant on multiple occasions;
• the defendant gave him five dollars after the first act of anal sex;
• the defendant once gave him a sexual enhancement pill before sex;
• his brother Ben walked in on him and “Coach” during an act of anal sex;
• after moving in with an aunt, who testified later in the trial, they returned once to defendant’s home;
• the next time “Coach” came to get them, their aunt wouldn’t let them go, as the two brothers seemed fearful of “Coach”; and
• they later told their aunt that the defendant had sexually abused them, and she then called the police.

B. Other State Witnesses

(1) Gloria Taylor testified:
• Art is her son, and Cal is her grandson; [11]
• Art was between ages 9 and 12 the first time he went to play ball with “Coach”;
• Art spent the night with “Coach” 10 or 12 times;
h* when Cal was caught skipping school, Art started questioning Cal and information about “Coach” came out, soon involving the police;
• “Coach” had given- Art a cell phone and tennis shoes; and
• Art’s relationship with “Coach” lasted more than a year.
(2) Sheila Logan testified:
• She is an aunt of Ben and Dan, who are her brother’s children;
• the brothers had been living with their older brother and grandmother;
• the boys moved in with her about four years before the trial;
• they moved in when Ben was about 12 or 13 and Dan was about 17 or 18;
• “Coach” came by once on Dan’s birthday, and the boys did not want to go;
• Dan seemed fearful of him;
• she told the defendant to leave her house in 2009 or 2010 or possibly 2011;
• “Coach” did not leave until she threatened to call the police;
• “Coach” drove his truck by there at later times, but without stopping;
• after Ben told her what had happened, she reported the crimes to the police;
• Ben will talk about the incidents more so than Dan; and
• she was 44 years old as of the date of the trial and had never had criminal problems.
(3) De’Andre Bell testified:
• he was a detective with the Shreveport Police Department (“SPD”);
• he had worked for the SPD for 12 years at the time of trial;
• he was the lead investigator on these four cases;
k* his first involvement came at the request of an officer working off-duty security at Caddo Middle Career and Technology School;
• the officer reported to him that Cal had been skipping school;
• after speaking with Cal’s Uncle Art, he set up an interview for Cal at The Gingerbread House, a child advocacy center;
• he had observed about a thousand of these interviews in five years;
*297 • Cal identified “Coach” to be Willie Johnson;
• it was hard for Cal to talk about what happened;
• Cal said he wasn’t forced into doing these things, but he did it for small amounts of money and because he was scared of “Coach”;
• Art told him that “Coach” had done the same things to him;
• the experiences of Art and Cal sounded very similar;
• Art’s interaction with “Coach” started at about age 12 “going on 13,” and Cal’s interaction started about age 13 and lasted about nine months;
• his investigation revealed 10 police reports listing 25 other male victims claiming to have been sexually molested by this same defendant;
• when he contacted Ms. Logan, she ■started crying because she had been calling for help for months;
• he set up a Gingerbread House interview for Ben in February of 2013;
• what happened to Ben and Dan mirrored what happened to Art and Cal; and
• Art and Cal were not aware of Ben and Dan.

C. The Defendant

Willie Lee Johnson took the stand and stated:
• he was retired from General Motors;
• he knew three of the four victims;
• he denied knowing Cal;
b* he denied any improprieties with any of the boys;
• he had pornography at his house, but never showed it to any of the boys;
• he drove a red truck, a white Cadillac, and an SUV in the past; and
• he had a previous conviction for theft and a no contest to contributing to the delinquency of a juvenile involving a can of beer.
IV.THE VERDICTS
On Count One, involving the victim ART, the jury returned a verdict of guilty of molestation of a' juvenile lasting more than one year. '
On Count Two, involving the victim BEN, the jury returned a verdict of guilty of molestation of a juvenile.
0'n Count Three, involving the victim CAL, the jury returned a verdict of guilty of molestation of a juvenile.
On Count Four, involving the victim DAN, the jury returned a verdict of carnal knowledge of a juvenile
V.POST-TRIAL MOTIONS
The defendant filed for a post verdict judgment of acquittal because of insufficient evidence. He also filed a motion for a new trial.[12]
Both motions were denied.
VI.ASSIGNMENTS OF ERROR

A. Improper Opening Statement and Closing Argument

Without objection, in opening argument, the prosecutor compared the defendant to the “bogey man.” During the state’s rebuttal to the defendant’s | ^closing argument, the prosecutor again compared the defendant to the “bogey man,” again without objection. The defendant requested a mistrial because of the state’s reference, in closing, to “WWJD,” an acronym *298 for the slogan, “What.Would Jesus Do?”[13] The motion for mistrial was denied.
On this issue, the state points out:
• the'comments were not prejudicial as contemplated by La. C. Cr. Pi art. 770;
• the meaning of the phrase “WWJD” was never disclosed to the jury and was merely meant as a pun to illustrate the actions of the defendant;
• there was no calculated plan to insert religion into the proceedings; and
• even if inappropriate, these comments only amounted to harmless error.
We agree with the state on this issue. There were no contemporaneous objections, and the WWJD reference was not an appeal to religion. The evidence of guilt was overwhelming, making these comments, at most, harmless error.
Each of the victims testified, as to the sordid facts, consistently and in great detail, revealing a predator who preyed on economically disadvantaged boys, portrayed himself as a basketball coach to gain their |»trust, and iised his influence and money to molest ‘them. The jury found the victims’ testimony to be credible.

B. Denial of Cross-Examination About a Victim’s Juvenile Adjudication

The trial court properly denied defendant’s request to cross-examine Cal on his juvenile adjudication. La. C.E. art. 609.1(F) prohibits this gambit.
The defendant was permitted to ask Cal whether he received any sort of advantage in exchange for his testimony. Cal denied this. :
La. C.E. art. 609.1(F) provides, “Evidence of juvenile adjudications of delinquency is. generally not admissible under this Article, except for use in proceedings brought pursuant to the habitual, offender law, R.S. 15:529.1.” Obviously, this case was not a habitual offender proceeding.
Admittedly, the record does not much illuminate the trial court’s balancing of the defendant’s right of confrontation with the right of confidentiality in juvenile proceedings. No request for an in camera inspection was made. No copy of Cal’s juvenile record is included for our review.-
The exclusion of this juvenile record appears to be harmless, considering that three other -witnesses provided testimony consistent with Cal’s testimony. Cal also denied that he was gaining any advantage in exchange for his testimony.
At worst, we find this to be harmless error.
|12C. Access to the State’s File
The defendant complains that his due process rights were infringed when the trial court sealed his record and refused to allow him to have a copy of it. He directs this Court to State v. Thompson, 2000-1808 (La.2/2/01), 781 So.2d 1221, for guidance on the scope of La. R.S. 46:1844(W), the statute addressing the confidentiality of crime victims who are minors and victims of sex offenses.
The state responds that the defendant fails to show that the trial court abused its discretion by issuing the protective order *299 with respect to the defendant’s file because the order was issued to protect the victims’ identities. Also, the state notes that the defendant viewed his entire file in the presence of his attorney.
Louisiana has a statute with some pertinence to this issue.[14]
State v. Thompson, supra, also provides guidance[15] regarding the trial court’s authority to protect the identity of minor victims, but it does not directly speak to a trial court’s authority regarding the scope of a protective order issued to limit the *300 defense’s use and dissemination of the confidential- information.
This Court recently addressed this specific issue in State v. Moody, 50,001 (La.App.2d Cir.9/30/15), 178 So.3d 1031.[16] In Moody, the defendant, who was convicted of forcible rape, complained on appeal that the. trial court erred when it granted the state’s request for a protective order |^regarding the defendant’s file. Just as in the instant case, the trial court ordered that while defense counsel could have a copy of the state’s file and could share the information with the defendant, the defendant could not have his own copy lest he disseminate confidential information to other inmates in jail. Unlike here, Moody did not request a redacted copy of the state’s file.
This Court rejected the defendant’s claim, explaining:
While a defendant clearly has the right to prepare for trial without undue burden, the legislative pronouncement about the identity of a victim of a sex offense is of substantial importance as well. Although Defendant’s appellate counsel presents the option that Defendant receive a redacted copy of discovery materials, a review of the appellate record suggests that Defendant’s trial counsel did not make such a request. Defendant’s appellate attorney argues that the district attorney had the responsibility to redact the material, but La. R.S. 46:1844(W)(l)(b) imposes a like duty on counsel for any party, including the defendant.
Furthermore, in order to obtain relief for a discovery violation, a defendant must‘show prejudice. State v. Thompson, 44,176 (La.App.2d Cir.5/13/09), 12 So.3d 1002. Defendánt has failed to show any prejudice from the procedure employed. His counsel had access to all discovery materials and was allowed to show the materials to Defendant and to discuss them with Defendant in preparation for trial. The appellate record does not state whether Defendant and his counsel took advantage of this available procedure. Although Defendant may choose to explore a remedy further through post-conviction relief, the appellate record does not entitle Defendant to a reversal on appeal. •

State v. Moody, supra.

As stated in State v. Thompson, supra, when a defendant makes a discovery request for the identity of a minor victim or victim of a sex offense, a trial court “shall direct disclosure of the minor victim’s identity under a protective order which strictly limits the defense use and 11sdissemination of the information only as necessary to the preparation of its case for trial.” In the instant case, the protective order limited the defense’s use and dissemination of the victim’s information by prohibiting the defendant from having a copy of his file. The court also denied the request for a redacted copy until after the defendant’s trial. Allowing this request would have served the dual purposes of both protecting the identities of the minor victims, as well as providing the defendant with the information he sought to assist in his defense.[17] Nonetheless, the defen *301 dant’s trial attorney was provided with an unredacted copy of the defendant’s file to assist in trial preparation. Additionally, the defendant has not demonstrated how he was prejudiced by any discovery violation. As we explained in State v. Moody, supra, the defendant is entitled to seek post-conviction relief regarding this issue, which would afford him the benefit of an evidentiary hearing if warranted.

D. Excessive Sentences

The defendant claims that since he is 60 years old, the cumulative 80 years of sentences are in effect a life sentence. He points out that he is an Army veteran who has worked his entire life and has never been convicted of any other crimes.
We find that the sentences in Counts One and Two are illegal and must be vacated and remanded to the trial court for resentencing. The state |lf,concedes that the 30-year hard labor sentence imposed for the conviction of molesting Art is illegally harsh, since the maximum at the time of the crimes was 15 years. We find the sentence imposed for the molestation of Ben is illegally lenient, as the applicable sentencing range when Ben was molested was from 25 to 99 years, with a minimum of 25 years to be served without benefits.[18]
As for the sentences involving Cal and Dan, the. state argues that the trial court considered all sentencing factors and imposed constitutional sentences.
,, The trial court reviewed in detail the criteria of La. C. Cr. P. art 894.1, finding several aggravating factors[19] and no mitigating factors.
We now review the consecutive sentences imposed for Count Three, the molestation of Cal (15 years at hard labor and a $2,500 fine), and for,Count Pour, the carnal knowledge of Dan (5 years at hard labor and a $2,500 fine).
Our law on the review of allegedly excessive sentences is well settled.[20]
*302 :|17La. R.S. 14:81.2 provides:[21]
(B)(2) Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet .attained the age of seventeen, and when the offender has control or supervision over the juvenile, shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than twenty years, or both. The defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.
La. R.S. 14:80 provides:[22].
JiS* * *
D. (1) Whoever commits the crime of felony carnal knowledge of a’ juvenile shall be fined not’ more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his ^prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
The sentences on Counts Three and Four are clearly not excessive.
The defendant could have received a 20-year sentence and $10,000 fine for his molestation conviction under Count Three. Instead he was sentenced to 15 years at hard labor and a $2,500 fine.
He could , have received a 10-year sentence and a $5,000 fine on Count Four for his felony carnal knowledge conviction. Instead, he was sentenced to five years at hard labor and a $2,500 fine.
Given his deplorable conduct, these two midrange sentences do not shock the sense of justice and are accordingly affirmed.
VII. Errors Patent
A Illegally Harsh Sentence for the Molestation of Art
The sentence imposed- for the defendant’s conviction for molesting Art is illegally harsh. At trial, Art testified that he met the defendant in January of 1993, and *303 that the-defendant sexually molested him until around the time he turned 15, which would have been March of 1995. The jury concluded that the defendant molested Art repeatedly for more than a year. . ,
It is axiomatic that a defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. State v. LeBlanc, 2014-0163 (La.1/9/15), 156 So.3d 1168; State v. Sugasti, 2001-3407 (La.6/21/02), 820 So.2d 518. The imposition of a harsher |iasentence than that prescribed at the time the offense was committed constitutes a violation of the ex post facto clauses of both the federal and state constitutions. State v. Taylor, 34,823 (La.App.2d Cir.7/11/01), 793 So.2d 367; State v. Moore, 37,046 (La.App.2d Cir.5/14/03), 847 So.2d 97.
During the time period that the defendant molested Art, La. R.S. 14:81.2 provided, in pertinent part:
D.(l) Whoever commits the crime of molestation of a juvenile when the incidents of molestation recur during a period of more than one year shall, on first conviction, be fined not more than ten thousand dollars or imprisoned, with or •without hard labor, for not less than five nor more than fifteen years, or both. At least five years of the sentence imposed shall be without benefit of parole, probation or suspension of sentence.
The maximum sentence for the molestation of Art was thus 15 years at hard labor, with at least five years required to be served without benefits. The defendant’s 30-year sentence, with five years to be served without benefits, is, illegally harsh. We must vacate and remand.

B. Illegally Lenient Sentence for the Molestation of Ben

Thé sentence -imposed for the defendant’s molestation of Ben is illegally lenient. • Ben testified that he was 11 years old when he went with his brother to the defendant’s house, where the defendant touched his penis twice and videotaped him in the shower. The jury found that the acts- of molestation perpetrated against Ben did not continue for a period of more than one year, since Ben would have turned 12 in May of 2009.
lanEffective August 15, 2008,[23] La. R.S. 14:81.2 provides, in relevant part, with emphasis added:
E. (1). Whoever commits the crime of molestation of a juvenile when the,victim is under .the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.
Eor molesting Ben, the defendant was sentenced to 30 years at hard labor, with the first five years to be served without benefits. This sentence is illegally lenient because the relevant version of R.S. 14:81.2 clearly requires at least 25 years without benefit of probation, parole or suspension of sentence.” When a statute of conviction provides that “at least” some of the defendant’s sentence be served without benefits, sentencing discretion is involved. We vacate the sentence and remand for resentencing.

C. Failure to Inform of Sexual Offender Notifícation Requirements

The trial court did not. inform the defendant of the sex offender notification requirements outlined in La. R.S. 15:543. *304 The defendant was convicted of four “sex offenses” under La. R.S. 15:541,[24] La. R.S. 15:542 provides registration requirements for sex offenders. La. R.S. 15:543 requires that the trial court notify a defendant charged with a sex offense in writing of the registration requirements.
On remand the trial court shall provide the appropriate written notice to defendant of these requirements on each of the four convictions.
[^DECREE
All four of defendant’s convictions are affirmed. The sentences imposed on Counts Three and Four are affirmed. The sentences for Counts One and Two are vacated and those matters are remanded to the trial court for resentencing. We direct the trial court to give the defendant written notice, at resentencing, of his sex offender notification requirements on all four convictions.
ALL CONVICTIONS AFFIRMED; COUNTS ONE AND TWO SENTENCES VACATED AND REMANDED FOR RE-SENTENCING.

. In order to protect the privacy of these related victims, and to help the reader (and writer) comprehend the complicated and confusing sets of facts, the four victims will be referenced by fictitious first names. Two of the juvenile victims have the initials "D.T.” while the other two juvenile victims have the initials "M.P.” Consequently, we have arbitrarily given each child a short name at random. Thus, we stray from the letter, but not the spirit, of La. R.S. 46:1844(W).

. This victim in Count One shall be referenced herein as "Art.” He was bom on 3/14/80.

. This victim in Count Two shall be referenced herein as "Ben.” He was born on 5/25/97.

. This victim in Count Three shall be referenced herein as "Cal.” He was born on 5/28/99.

. This victim of felony camal knowledge shall be referenced herein as “Dan.” The bill of information lists his date of birth as 5/27/92. At trial, he testified that his date of birth is 5/25/92.

. The jury found that the molestations of Art occurred over more than a one-year period.

. The jury did not find that Ben was molested for more than a one-year period.

. The AAU is a .nonprofit ■ national sports league, which formerly prepared athletes for the Olympic Games.

. This subsection provides, “F. Juvenile adjudications. Evidence of juvenile adjudications of delinquency is generally not admissible under this Article, except for use in proceedings brought pursuant to .the habitual offender law, R.S. 15:529.1.” .
This case has nothing to do with habitual offender proceedings.

. The bill of information lists his date of birth as May 27, 1992, which would have made him 22 as of the date of trial.

. Cal's mother is Gloria Taylor’s daughter, who is Art’s sister. Thus, Cal is Art’s nephew.

. The motion alleged: (-1) the trial court improperly sealed his file; (2) the state withheld evidence that Cal had a criminal record; and (3) the state’s arguments were improper.

. Prosecutor: Have you ever heard the saying, WWJD? I'll leave you with this. Given— Defense counsel: Objection, Your Honor.
Prosecutor: — given—
Defense counsel: Article 770, Religion.
Trial Court: Overruled.
Prosecutor: Given an inner city street, inner city neighborhood, young boys playing basketball or football, or playing outside, age range 11 to 15, given that demographic, put a group of little boys doing those things, living in that sort of environment, I’ll leave you with WWWJD, what would Willy Johnson do? Molest them, and take advantage of them, and rob them of their youth and innocence[.]

. La. R.S. 46:1844(W) provides impertinent part:
(1) (a) In order to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses or human trafficking-related offenses, notwithstanding any provision of law to the contrary, all public officials and officers and public agencies, including but not limited to all law enforcement' agencies, sheriffs, district attorneys, judicial officers, clerks of court, the Crime Victims Reparations Board, and the Department of Children and Family Services or any division thereof, shall not publicly disclose the name, address', or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age or of victims of sex offenses or human trafficking-related offenses, regardless of the date of commission of the offense. The confidentiality of the identity of the victim who at the time of the commission of the offense is a minor under eighteen years of age or the victim of a sex offense or human trafficking-related offense may be waived by the victim. The public disclosure of the name of the juvenile crime victim by any public official or officer or public agency is not prohibited by this Subsection when the crime resulted in the death of the victim, (b) In order to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses or human trafficking-related offenses, notwithstanding any provision of law to the contrary, an attorney for any party shall be prohibited from publicly disclosing, except during trial, the name, address, or identity of crime victims who at the time of the commission of the offense are under eighteen years of age or are victims of sex offenses or human trafficking-related offenses, regardless of the date of commission of the offense. An attorney may lawfully utilize initials, abbreviations, or other forms of indefinite descriptions on documents used in the performance of .their duties to prevent the public disclosure of. the name, address, or identity of such crime victims. If the name, address, or identity of such a crime victim must be disclosed in a motion or pleading, that motion or pleading shall be filed with the court requesting that it be kept under seal. Failure to comply with the provisions of this Subparagraph shall be punishable as contempt'of court.
(4) The provisions of this Subsection shall not apply to the requirement of promptly informing a defendant or his attorney of the name of the victim of a sexual crime during pretrial discovery.

. In State v. Thompson, supra, the supreme court explained:
A defendant does not have the right under La. R.S. 46:1844(W)(4) to secure publicly the name of the minor victim of a crime during the course of general discovery but the statute as presently written does not preclude the district attorney from providing the requisite notice during pre-trial discovery by making an in camera disclosure of the victim's identity to counsel for the accused under the direction of the trial court. Such a procedure will effectuate the defendant’s right to. adequate notice while accommodating the legislature’s continued and heightened concern for ‘‘eas[ing] the emotional burden on immature victims.” State v. Ste. Marie, 98-1167, p. 4 (La. 12/18/98), 723 So.2d 407, 410. However, to keep the balance true to the purpose of the statute and the state's compelling interests in protecting the well-being of minors, the district court shall direct disclosure of the minor victim's identity under a protective order which strictly limits - the defense use and dissemination of the information only as necessary to the preparation of its case for trial. State v. Thompson, supra, at 1222-1223.

. State v. Moody involved the same trial court judge, the same prosecutor, and the same defense attorney as the instant case.

. This Court has held, in two unpublished writ dispositions, that sealing an entire record is "too broad a remedy for the limited scope of protection of the victim’s identity,” while redaction sufficiently complies with La. R.S. 46:1844(W). State v. McGee, 49,768-KW (La.App.2d Cir. 11/21/14); State v. Frazier, 44,003-KW (La.App.2d Cir.10/2/08). Johnson did not seek supervisory review of the trial court’s denial of his request to unseal the record.

. See Part VII. Errors Patent, infra.

. The court found: (1) the defendant’s conduct amounted to deliberate cruelty to his victims; (2) the defendant should have known that the victims were particularly vulnerable due to their young ages; (3) the defendant offered something of value in order to commit the offenses; (4) the defendant used his position of status to facilitate the crimes; (5) the defendant knowingly created a risk of death or great bodily harm to more than one person; (6) the defendant's crimes resulted in significant permanent injury to his victims; and (7) the defendant was pérsistently involved in similar offenses not already considered as a criminal history or part of a multiple offender adjudication.

. An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list evety aggravating or miti- . gating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant's personal history (age, family ties, .marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d *302 Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
■ Second, the court must determine whether the sentence- is constitutionally excessive. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d. 330; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228, On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.
Where the convictions stem from separate incidents involving different victims and occur over a lengthy period of time, the resulting consecutive penalties will generally not be found to be an abuse of that discretion. State v. Porter, 29,638 (La.App.2d Cir.9/24/97), 700 So.2d 1058, 1062, writ denied, 97-2674 (La.2/13/98), 706 So.2d 993.

. The relevant portion of La. R.S. 14:81.2 has not been amended from its 2012.version.

. The relevant portion of La. R.S. 14:80 has not been amended from its 2008 version.

. Acts 2008, No. 33, § 1.

. The offenses of molestation of a juvenile and (felony) carnal knowledge of a juvenile are “sex offenses” for purposes of La. R.S. 15:540, etseq.